# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| KENNETH COOK, JAMES BOTTS, SHAWN HUNTER, LARRY LACLAIR, THOMAS SHORT, GEORGE WILLIS, JAMES CAHOON, and CHRIS PAULLEY, on behalf of themselves and others similarly situated, | ) ) ) ) ) ) | Case No. 3:17-cv-00909 Judge Aleta A. Trauger |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| E.I. DUPONT DE NEMOURS AND COMPANY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM

Before the court is the Motion to Transfer Based on the First-Filed Rule and Incorporated Memorandum of Law (Doc. No. 27), filed by defendant E.I. du Pont de Nemours and Company ("DuPont"), seeking transfer of this action to the United States District Court for the Eastern District of Texas. The plaintiffs have filed a Memorandum in Opposition to Defendant's Motion to Transfer (Doc. No. 35), and DuPont has filed a Reply (Doc. No. 41). In addition, DuPont has filed a Notice of Supplemental Authority (Doc. No. 48), to which the plaintiffs have responded (Doc. No. 49).

Also pending are Plaintiff's Motion for Conditional Certification and Expedited Court-Supervised Notice to the Potential Plaintiffs (Doc. No. 8), and DuPont's Motion to Stay Proceedings Pending Ruling on Defendant's Motion to Transfer (Doc. No. 28).

For the reasons set forth below, the court will grant the Motion to Transfer and deny as

moot the Motion to Stay. The court declines to rule on the Motion for Conditional Certification, leaving that motion to the transferee court.

## I.      BACKGROUND

On September 2, 2016, Gene Chance filed a collective-action lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, against DuPont in the United States District Court for the Eastern District of Texas, Case No. 1:16-cv-376 (the "Texas action"). (Doc. No. 27-1.) In the Third Amended Complaint, the operative pleading, Chance brings claims individually and on behalf of those similarly situated against DuPont. The collective action class of similarly situated individuals is defined as including "all hourly and/or 'Salaried Non-Exempt' current and former employees who worked at Defendant's [50 facilities nationwide] and who were not paid the correct overtime wages." (Doc. No. 27-2, Texas Action 3d Am. Compl. ¶ 4.) Chance alleges that, until April 1, 2016, all non-exempt employees at each of DuPont's Legacy facilities were paid overtime wages that were improperly based on each employee's "straight time" rate wages rather than the actual remuneration the employees were paid, including Shift Premium Allowances and other remuneration, in violation of the FLSA.

He also alleges that DuPont's payroll system, "MyInfo," changed in April 2016 and that DuPont made retroactive payments of recalculated overtime wages to current employees but that the amount paid did not fully compensate the named plaintiff or similarly situated employees, as it was improperly calculated and did not include liquidated damages as mandated by the FLSA. He seeks an order certifying the matter as a collective action and directing notice to putative collective action class members; damages in the full amount of unpaid overtime wages plus liquidated damages for a three-year limitations period, based on the defendant's willful violations of the FLSA; attorney fees, costs, pre- and post-judgment interest, and any other relief

in law or equity to which the plaintiff and putative collective action members may be entitled. The plaintiff's Amended Motion to Certify a Collective Action Pursuant to Section 216(b) of the FLSA and to Approve a Proposed Notification to All Putative Collective Class Action Members, filed on May 8, 2017, remains pending in the Texas court.

On June 2, 2017, exactly nine months after the Texas Action was filed, plaintiffs Kenneth Cook, James Botts, Shawn Hunter, Larry LaClair, Thomas Short, George Willis, James Cahoon, and Chris Paulley (the "Cook plaintiffs"), on behalf of themselves and others similarly situated, filed the present action in this court. The similarly situated collective action members identified by the Complaint consist of all current and former hourly employees "who worked in Hourly Paid Positions at one of defendant's plants nationwide" (Compl. ¶ 1) and were unlawfully deprived of overtime compensation under the FLSA (Compl. ¶ 2). The Complaint is accompanied by opt-in notices from over 400 other current or former DuPont employees. (Compl. Ex. A.)

Like the plaintiff in the Texas Action, the Cook plaintiffs allege that DuPont improperly calculated their base wage rate for purposes of calculating overtime pay. They also allege that, after April 1, 2016, DuPont changed its payroll system to calculate the base pay rate differently and that it made some back payments of additional overtime pay for time worked prior to that date but that the additional payments did not include liquidated damages or interest. Unlike Chance, the Cook plaintiffs expressly allege a violation of the "prompt payment" requirements of 29 C.F.R. § 778.106 and assert that individuals who were no longer employed by DuPont as of April 1, 2016 never received any additional payments for overtime pay worked prior to April 1, 2016. The Complaint articulates a single cause of action ("Count I") for violation of 29 U.S.C. § 207(a) and 29 C.F.R. Part 778, based on the withholding of timely overtime pay. Like Chance,

the Cook plaintiffs seek liquidated damages and a three-year limitations period based on the defendant's allegedly willful violation of the FLSA. (Compl. ¶¶ 40–48.)

On June 15, 2017, DuPont filed the present Motion to Transfer, arguing that transfer of this action to the United States District Court for the Eastern District of Texas is warranted under the so-called "first-to-file" rule, on the basis that the two collective action cases are essentially identical. As indicated above, the motion has been fully briefed and is ripe for review.

## II.    LEGAL STANDARD

The Sixth Circuit has recognized the "first-to-file rule" as a "well-established doctrine that encourages comity among federal courts of equal rank." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*, 16 F. App'x 433, 437 (6th Cir. 2001). The rule "also conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). "The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Id.* (internal quotation marks and citation omitted).

The first-to-file rule generally applies where (1) the two actions involve nearly identical parties; (2) the two actions involve nearly identical issues; and (3) no equitable reasons or special circumstances are present to defeat the first-to-file rule. *Long v. CVS Caremark Corp.*, No. 5:09CV1392, 2010 WL 547143 at *2 (Ohio Feb. 11, 2010). When the first-to-file rule is properly raised, a district court presiding over the second-filed case has many options for proceeding, including dismissing the case without prejudice, staying the suit before it, allowing both suits to proceed, or, in some cases, enjoining the parties from proceeding in the other suit. *Baatz*, 814

F.3d at 793.

The rule is not strict, *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004), and it is within the discretion of the district court to decline to enforce it, "where equity so demands," such as when the record contains evidence of forum shopping, bad faith, or inequitable conduct. *Zide Sport Shop*, 16 F. App'x at 437. However, numerous courts have recognized that, "[i]n the FLSA collective action context, the First-to-File rule is often applied and is particularly appropriate." *Guyton v. Legacy Pressure Control, Inc.*, No. SA-15-CV-1075-XR, 2016 WL 5794801, at *2 (W.D. Tex. Oct. 4, 2016). *See also Granado v. Quality Energy Servs., Inc.*, No. SA-15-CV-1061-XR, 2016 WL 705228, at *2 (W.D. Tex. Feb. 18, 2016) ("[D]istrict courts "have routinely applied the first-filed rule in the face of similar dual collective actions.'" (quoting *Tex. Instruments v. Micron Semiconductor*, 815 F. Supp. 994, 997 (E.D. Tex. 1993), and citing *Tillery v. Higman Barge Lines, Inc.*, 2014 WL 1689942 (S.D. Tex. April 29, 2014); *White v. Peco Foods, Inc.*, 546 F. Supp. 2d 339 (S.D. Miss. 2008); *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686 (E.D. Tenn. 2005)).

## III. DISCUSSION

The Cook plaintiffs argue that 28 U.S.C. § 1404(a) is the proper statute under which this court should decide a motion for transfer of venue. A motion to transfer venue under § 1404(a), however, is distinct from a motion to transfer under the first-to-file doctrine. "The former type of motion asks a court to transfer a proceeding for the convenience of the parties, whereas the latter is a doctrine rooted in judicial comity." *NCR Corp. v. First Fin. Computer Servs., Inc.*, 492 F. Supp. 2d 864, 868 (S.D. Ohio 2007). A court ruling on a motion to transfer under the first-to-file doctrine can consider convenience in its decision, but it should focus its analysis on comity and economy between courts with cases that have substantially similar issues. *Id.* This court will

analyze the motion under the first-to-file rule.

In applying that rule, "courts generally evaluate three factors: (1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz*, 814 F.3d at 789 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)). If these factors support application of the rule, the court must also evaluate whether equitable considerations weigh against it. *Id.* at The court will address each of these factors in turn.

### A.    Chronology of Events

As set forth above, Gene Chance filed the Texas Action first, on September 2, 2016, while the Cook plaintiffs did not file until nine months later, on June 2, 2017. The operative Third Amended Complaint in the Texas Action was filed on May 8, 2017, still before the Complaint in this action was filed. Even if it had not been, an action commences upon filing. Fed. R. Civ. P. 3; *Am. Modern Home Ins. v. Insured Accounts Co.*, 704 F. Supp. 128, 130 (S.D. Ohio 1988).

The Sixth Circuit has held that, "[f]or purposes of first-to-file chronology, the date that an original complaint is filed controls." *Zide Sport Shop*, 16 F. App'x at 437. And "the 'chronology of events' factor simply asks which of the two overlapping cases was filed first." *Baatz*, 814 F.3d at 790. Because the Texas Action was filed nine months before the present action, the chronology of the two actions favors applying the first-to-file rule here.

### B.    Similarity of the Parties

Second, the Court must consider the similarity of the parties involved. "The first-to-file rule applies when the parties in the two actions 'substantial[ly] overlap,' even if they are not perfectly identical." *Id.* (citations omitted).

There is no dispute that the sole defendant, DuPont, is identical in the two actions. The parties disagree as to whether the plaintiffs are sufficiently similar. DuPont argues that the plaintiffs in the two actions are substantially similar, even though the *named* plaintiffs in the two actions are different, because the putative collective action class in both cases "includes current and former non-exempt technicians and operators at DuPont's 50 Legacy Facilities." (Doc. No. 27, at 10.) Further, it asserts that this case seeks to certify a collective action whose members are "identical to the FLSA collective that Chance has already moved to certify, defining the classes as all similarly situated non-exempt technicians and operators who worked overtime in the entire United States over the three years preceding the filing of the respective complaints who were paid using the 'MyInfo' payroll system." (Doc. No. 27, at 10.)

In response, the Cook plaintiffs argue that they are dissimilar from the single plaintiff, Gene Chance, in the Texas Action, because Chance is not a plaintiff in this action and the plaintiffs here are not plaintiffs in the Texas Action. This argument is without merit. The first-to-file rule in a class action suit requires the court to compare the proposed classes, not the named plaintiffs. *See Baatz*, 814 F.3d at 790 ("[F]or purposes of identity of the parties when applying the first-to-file rule, courts have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified."). *Accord Watson v. Jimmy John's, LLC*, No. 2:15-CV-768, 2015 WL 4132553, at *3 (S.D. Ohio July 8, 2015); *Siegfried v. Takeda Pharm. N. Am., Inc.*, No. 10-cv-02713, 2011 WL 1430333, at *5 (N.D. Ohio Apr.14, 2011); *Long*, 2010 WL 547143, at *3.

Second, the Cook plaintiffs argue that their proposed collective, unlike that in the Texas action, includes former employees who never received any portion of the back payment owed by DuPont after it changed payroll systems. This contention, too, is without merit. The Texas

Action's proposed collective expressly includes former as well as current employees, as set forth above, and the plaintiff's proposed notice in the Texas Action implicitly acknowledges that former members who never have received any of the additional overtime pay to which they are entitled are part of the collective. The proposed notice states, in pertinent part: "If you previously received a payment from DuPont, you are still entitled to opt in to this lawsuit to receive any additional amount of overtime wages and matching amounts of wages payable to you as liquidated damages under the law." (Texas Action, Doc. No. 32, at 26.) This language presumes that former employees who never received any back payment of overtime wages are entitled to opt in.

The plaintiffs also contend that DuPont's own arguments in its opposition to Chance's motion to certify a collective action in the Texas Action demonstrate that the "lone plaintiff's claims stem from circumstances unique to that particular plaintiff and his plant" in Texas. (Doc. No. 35, at 5 (citing Texas Action, Def.'s Opp. to Certification, Doc. No. 37, at 19–20).) The Cook plaintiffs point out that DuPont argues there that Chance offered "'no proof that he is similarly situated to the putative collective members,' at other DuPont facilities, which would include the three facilities at which plaintiffs in this lawsuit work." (*Id.* citing Texas Action, Def.'s Opp. to Certification, Doc. No. 37, at 15).) However, the fact that the defendant contests the certification of the collective action in both cases on the basis that the collective action members are not similarly situated has no bearing on whether the identity of the plaintiffs in each case substantially overlaps. Moreover, having one court rather than two consider the parallel motions to certify will further interests of comity and judicial economy.

The Cook plaintiffs object that the contingency fee arrangement in each case is substantially different. However, while this may be an equitable factor to consider, it does not

affect the identity of the plaintiffs in each case Likewise, as the *Baatz* court recognized, the fact that the Cook plaintiffs could choose not to opt in to the Texas action is not relevant:

> This analysis is not affected by the [plaintiffs'] representation that they would opt out of the class [in the first-filed case] if it is certified. That is certainly their right if and when that day comes. *See* Fed. R. Civ. P. 23(c)(2). But allowing plaintiffs to use this representation to prevent the first-to-file rule from being applied in the first instance would undercut the purposes of the first-to-file rule: parties, not courts, would determine when the rule could be applied, and could force resource-draining duplicative class actions to proceed simultaneously. This would unduly burden the courts, and could be used as a vexatious litigation tactic. While the opt-out right may allow for (and perhaps anticipate) duplicative litigation, it should not prospectively prohibit courts' efforts to conserve resources by applying the first-to-file rule.

*Id.* (internal citation omitted). While the cases here involve opt-in collectives under the FLSA rather than true class actions governed by Rule 23, the same analysis applies.

In short, it is clear that the proposed collectives substantially overlap. The Cook plaintiffs, in their Motion for Conditional Certification and Expedited Court-Supervised Notice to the Potential Plaintiffs, identify the collective action members as including "all present and former hourly employees who work or who have worked at any of [DuPont's] facilities nationwide and who were paid using the MyInfo payroll system at anytime since June 2, 2014," or three years prior to the filing of the Complaint (Doc. No. 8, at 1–2.) Chance, in his Amended Motion to Certify, defines his proposed collective as including "[a]ll current and former hourly or salaried non-exempt employees who worked for Defendant between September 2, 2013 and the present [that is, from three years prior to the filing of the Complaint to the present] who received a scheduled overtime allowance, including both day shift and night shift." (Texas Action, Doc. No. 32, at 26.) Although the pleadings do not use identical wording and the timing is different by nine months, both actions identify substantially the same employees and, importantly, seek to notify the same employees. Moreover, it is clear that the Cook plaintiffs are

incorporated within the definition of the Texas Action's proposed collective and that Chance would be included in the Cook plaintiffs' proposed collective. "This overlap satisfies the similarity of parties factor." *Baatz*, 814 F.3d at 791.

The court therefore finds, for purposes of the first-to-file analysis, that the parties are nearly identical. This factor weighs in favor of transfer.

### C. Similarity of the Issues

With respect to this factor, "as with the similarity of the parties factor, the issues need only to substantially overlap in order to apply the first-to-file rule." *Baatz*, 814 F.3d at 791. Although the issues do not have to be identical, they must "be materially on all fours and have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Id.* (internal quotation marks and citation omitted).

The gravamen of both actions is that DuPont violated the FLSA by failing to properly calculate its hourly employees' regular rate of pay and thus their overtime rate of pay. The Cook plaintiffs argue that the issues in the two cases are not sufficiently similar, because they have asserted a claim for the late payment of overtime in violation of the FLSA's prompt-payment requirements, 29 C.F.R. § 778.106, but Chance did not allege this violation in his Complaint. The court finds that, although Chance does not expressly invoke 29 C.F.R. § 778.106, the factual allegations in his Complaint support the same claim. Moreover, the Cook plaintiffs assert only one cause of action in their complaint. Their "prompt-payment" claim, at most, is a subclaim that falls under the umbrella of "improper overtime payments," which is the focus of both actions.

Even assuming that the Cook plaintiffs' invocation of 29 C.F.R. Part 778 raises a separate and different claim, the court still finds substantial overlap in the issues. Because of this overlap, a decision from this court "would not only tend to frustrate the legitimate aim of preserving

judicial economy, as substantially the same evidence would be presented in both actions . . . , but [would also pose] the possibility of inconsistent opinions." *Buffalo Wild Wings, Inc. v. BW Rings, LLC*, No. 2:10-cv-335, 2010 WL 4919759, at *3 (S.D. Ohio Nov. 29, 2010). In light of the close identity of claims, the court finds that the concerns of judicial comity and resource preservation further support application of the first-to-file rule.

### D.    Equitable Considerations

Finally, the court must also consider whether equitable concerns weigh against applying the first-to-file rule. *Baatz*, 814 F.3d at 792. Generally, the factors to be considered include "extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Id.* (citation omitted). "However, deviations from the rule should be the exception, rather than the norm." *Id.*

It does not appear that any of these concerns are at issue here. "This is not the classic case where one party has filed an anticipatory suit (usually a declaratory judgment action) in a preferred forum." *Id.* Plaintiff Chance is not alleged to have acted in bad faith or to have engaged in inequitable conduct. In fact, rather than addressing the equitable concerns enumerated by the Sixth Circuit in *Baatz*, the Cook plaintiffs insist that, as part of the court's inquiry into the equity of transfer, it should consider the same factors that apply to a motion to transfer venue under 28 U.S.C. § 1404(a). The cases upon which the plaintiffs rely, however, are largely distinguishable and have no relevance here. *See, e.g.*, *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 975 (7th Cir. 2010) (holding, in the context of "mirror-image lawsuits [filed] in two different district courts, each claiming the other had breached their contract for the manufacture and sale of an industrial cleaning machine," that the district court did not abuse its discretion in declining to apply the first-to-file rule and instead considering the relevant factors under § 1404(a)); *AmSouth Bank*, 386 F.3d at 791 n. 8 ("[T]he first-filed rule . . . much more

often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment.").

The court has already determined, above, that the interests of comity generally outweigh the interests of convenience in a first-to-file case. Again, the first-to-file doctrine is "designed to give courts discretion to decline to exercise jurisdiction in a case whose issues are already substantially implicated in a previously filed action in a court of concurrent jurisdiction." *NCR Corp. v. First Fin. Computer Servs., Inc.*, 492 F. Supp. 2d 864, 868 (S.D. Ohio 2007). The plaintiff has not shown that any of the relevant factors weighs against transfer or that equitable considerations should override the presumption that the first-to-file rule applies.

This court has a duty to avoid a ruling that would "entrench upon or inconsistently decide overlapping issues being addressed by another federal court." *Buffalo Wild Wings, Inc. v. BW Rings, LLC*, No. 2:10-cv-335, 2010 WL 4919759, at *3 (S.D. Ohio Nov. 29, 2010). The court finds that judicial consistency, economy, and comity support the transfer.

## IV.    CONCLUSION

For the foregoing reasons, the court will grant DuPont's motion to transfer to the United States District Court for the Eastern District of Texas (Doc. No. 27). The defendant's Motion to Stay will be denied as moot, and the court declines to rule on the Motion for Conditional Certification, leaving that motion to the transferee court.

An appropriate Order is filed herewith.

ENTER this 3rd day of August 2017.

ALETA A. TRAUGER
United States District Judge